# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 5696 | **DATE** | 1/26/2004 |
| **CASE TITLE** | Steadfast Insurance Company vs. Auto Marketing Network, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Steadfast's motions in limine [331, 332, and 333] are granted in part and denied as stated in the Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 6 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 28 2004 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 346 |
| | Copy to judge/magistrate judge. | | 1/26/2004 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEADFAST INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 97 C 5696 |
| ) | Judge Joan H. Lefkow |
| AUTO MARKETING NETWORK, INC. and ) | |
| IMPERIAL CREDIT INDUSTRIES, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

DOCKETED
JAN 2 8 2004

## RULINGS ON MOTIONS IN LIMINE

The following rulings are entered on Steadfast's motions in limine:

**A. Motion in Limine No. 1 for pre-trial rulings regarding the application and scope of 720 ILCS 5/46-(b).[1]**

In this motion Steadfast seeks an order (1) determining that § 5/46-5(b) imposes liability only for the "bad faith" filing of a claim under the Illinois Insurance Fraud Statute and not for the alleged "bad faith" assertion of alter ego liability or any other procedural device designed to pierce the corporate veil; (2) determining that under the Petition Clause of the First Amendment

---

[1] Section 5/46-5, entitled "Civil damages for insurance fraud or fraud on governmental entity," provides in pertinent part,

> (a) A person who knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of any insurance company by the making of a false claim or by causing a false claim to be made on a policy of insurance issued by an insurance company . . . shall be civilly liable to the insurance company . . . that paid the claim or against whom the claim was made . . . in an amount equal to 3 times the value of the property wrongfully obtained or, if no property was wrongfully obtained, twice the value of the property attempted to be obtained, whichever amount is greater, plus reasonable attorneys fees.
> (b) An insurance company . . . that brings an action against a person under subsection (a) of this Section in bad faith shall be liable to that person for twice the value of the property claimed, plus reasonable attorneys fees.

346

to the United States Constitution and the *Noerr-Pennington* doctrine, that no liability may be imposed upon Steadfast for filing its alter ego claim against Imperial unless the court first finds that Steadfast's claim was objectively baseless; (3) determining that the penalty imposed under § 5/46-5(b) should be calculated as twice the value of the property claimed through the alleged false insurance claim, and barring Imperial from introducing any evidence or making any argument that the penalty is twice the value of the treble damages Steadfast asserted in its insurance fraud claim; and (4) determining that the value of the property claimed through the alleged false insurance claim is the value of the amount of insurance benefits claimed by Steadfast to have been wrongfully obtained through a false insurance claim, and, in the event Imperial's counterclaim goes to the jury, submitting to the jury the issue of the value of the property claimed with appropriate instructions.[2]

*1.    Whether § 5/46-5 liability extends to the bad faith assertion of alter ego liability.*

Steadfast submits, for the first time, that it never sued Imperial for insurance fraud under § 5/46-5(a) but instead only sought to hold it liable under a piercing the corporate veil theory. Steadfast asserts that this attempt to impose alter ego liability, at least under applicable California law, is but a procedural device and not a substantive claim. *See Henessey's Tavern Inc.* v. *American Filter Co.*, 204 Cal. App. 3d 1351, 1358-59 (1988). Because Steadfast contends that

---

[2]Imperial initially argues that these claims should be considered waived because Steadfast did not raise them as affirmative defenses. While the court no doubt feels some level of dismay with the fact that substantive issues are still being raised in this case which has been pending for over six years and has already gone through extensive discovery, motion practice and one trial, Imperial does nothing to establish that these claims are in fact affirmative defenses. *See Mueller* v. *Ameritech Information Sys.*, 91 C 3429, 1992 WL 48014, *1 (N.D. Ill. March 3, 1992) ("[A]n affirmative defense is a statement that 'admits the truth of the complaint's allegations but states new matter that exculpates the defendant.'") (citing *U.S. Home Corp.* v. *George W. Kennedy Constr. Co.*, 610 F. Supp. 759, 761 (N.D. Ill. 1985)).

Imperial has not been sued under § 5/46-5(a), it argues that no liability can be imposed under § 5/46-5(b).

As Imperial points out, however, Steadfast has already admitted that it sued Imperial for insurance fraud under § 5/46-5(a). For example, in Steadfast's answer to Imperial's counterclaims, Steadfast denied the allegations except that it "admits that the Complaint sought relief under 720 ILCS 5/46-5(a) against AMN and Imperial." Steadfast's admission in its answer is binding. *See, e.g., Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings . . . that are binding upon the party making them."). Steadfast also sought relief in its Amended and Second Amended Complaints against both AMN and Imperial for "three times the value of any and all property wrongfully obtained by defendants, and twice the value of any and all property attempted to be gained by defendants . . . ." (Am. Compl. at 31 ¶ (b).) This language is identical to the relief provision of § 5/46-5(a). Finally, Steadfast pled as an affirmative defense to Imperial's counterclaim that Imperial was barred from recovery because of its "direct and indirect participation in the ongoing fraud alleged in the Second Amended Complaint and on account of its ratification of that fraudulent conduct." (Ans. at 4.) The fraud of the Second Amended Complaint is the claim under § 5/46-5(a). Accordingly, this argument is rejected.

2. *The Petition Clause of the First Amendment to the United States Constitution and the* Noerr-Pennington *doctrine.*

Steadfast next asserts that Imperial must establish that Steadfast's § 5/46-5(a) claim was "objectively baseless" so as to satisfy the requirements of the *Noerr-Pennington* doctrine. In *Eastern R.R. Presidents Conference v. Noerr Motor Freight Co.*, 365 U.S. 127 (1961) and

*United Mine Workers of Am.* v. *Pennington*, 381 U.S. 657 (1965), the Supreme Court held that genuine attempts to lobby or influence the legislature or political process could not serve as the basis for Sherman Act violations. *Noerr Motor Freight Co.,* 365 U.S. at 138 ("[T]he Sherman Act does not apply to the activities of the railroads at least insofar as those activities comprised mere solicitation of governmental action with respect to the passage and enforcement of laws."); *Pennington*, 381 U.S. at 670 ("*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent of purpose."). These ruling were based in part on the Petition Clause of the First Amendment in that the Court would not "lightly impute to Congress an intent to invade . . . freedoms protected by the Bill of Rights, such as the right to petition [the Government for redress of grievances]." *BE & K Constr. Co.* v. *National Labor Relations Bd.*, 536 U.S 516, 525 (2002) (citing *Noerr*, 365 U.S. at 136). The Petition Clause notwithstanding, however, the Court made clear in *Noerr* that activities which are "a mere sham" are not protected under the right to petition government. *Noerr Motor Freight, Inc.*, 365 U.S. at 145.

The Court in *California Motor Transp. Co.* v. *Trucking Unlimited*, 404 U.S. 508 (1972), later made clear that the right of access to the courts is protected by the Petition Clause. The Court noted that it "would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors." *Id.* at 511. The Court nevertheless found that for purposes of the motion at issue plaintiffs had sufficiently alleged that defendants' actions fell within the "sham exception in the *Noerr* case, as

adapted to the adjudicatory process." *Id.* at 516. In *Professional Real Estate Investors* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993), the Court outlined its two-part test for "sham" litigation. It noted that the law suit first "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 61. Assuming that the objective test is passed, the Court then counseled that a litigant's subjective motivation may be examined.[3] *Id.*

Neither of the parties presents particularly persuasive reasons as to why *Noerr-Pennington* either is or is not applicable here. Steadfast asserts conclusionally that it applies, although it cites no case analogous to this one. Yet, the Supreme Court's recognition in *BE & K Constr. Co.* that Rule 11 sanctions are not implicated in *Noerr-Pennington* situations would seem to allow the doctrine to be applied consistently with statutes such as 720 ILCS 5/46-5(b) that attempt to regulate frivolous litigation. 536 U.S. at 537 ("[N]othing in our holding today should be read to question the validity of common litigation sanctions imposed by courts themselves–such as those authorized under Rule 11 of the Federal Rules of Civil Procedure . . . ."). Imperial's view is that this doctrine must apply only in the antitrust setting or where significant public rights are implicated,[4] but it fails to provide a meaningful standard for this application (for example, it would seem that public rights are implicated in nearly every

---

[3]Steadfast asserts that this "objectively baseless" standard is a legal question for the court to decide.

[4]As noted above the *Noerr-Pennington* doctrine had its origins in antitrust litigation. Over time, however, the doctrine has been applied outside of the antitrust context. *See, e.g., NAACP* v. *Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) (applying *Noerr-Pennington* to civil conspiracy claim); *Barnes Found.* v. *Township of Lower Merion*, 242 F.3d 151, 160 (3d Cir. 2001) (noting that prior Third Circuit precedent "saw no reason why this principle of First Amendment immunity was not meant to have general applicability . . . ."); *Tarpley* v. *Keistler*, 188 F.3d 788, 794 (7th Cir. 1999) ("Although originally applied to provide immunity from antitrust prosecution, the *Noerr-Pennington* cloak of protection has been extended to cover other areas of law, including claims under § 1983.");

5

suit), and no case actually limits the doctrine to public rights. *See Video Int'l Prod., Inc. v. Warner-Amex Cable Communications*, 858 F.2d 1075, 1084 (5th Cir. 1988) (applying *Noerr-Pennington* to tort claim and noting "[t]here is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust."). Nor does Imperial have a persuasive response to Steadfast's argument that barring suits under 5/46-5(b) could infringe the First Amendment rights of insurers to petition the government through filing of insurance fraud law suits.

Nevertheless, even if the court is to assume that the *Noerr-Pennington* doctrine has some applicability here, the court believes the "objectively baseless" standard has already been satisfied. Steadfast's argument that this suit cannot be objectively baseless was specifically rejected in one of this court's earlier decisions. Steadfast maintains that Judge Aspen, to whom this case was originally assigned, determined that Imperial could not establish that Steadfast's alter ego claim failed as matter of law. According to Steadfast, because the alter ego theory of liability at least stated a claim, it cannot be objectively baseless. *E.g., Harris Custom Builders, Inc. v. Hoffmeyer*, 834 F. Supp. 256, 262 (N.D. Ill. 1993) ("An action that is well enough grounded, factually and legally, to survive a motion for summary judgment is sufficiently meritorious to lead a reasonable litigant to conclude that they had some chance of success on the merits."). However, that conclusion rests on the assumption that the inquiry should be limited to whether the claim itself, and not the original complaint, was objectively baseless. The court specifically noted in its summary judgment decision that "the operative complaint filing is the one that initiated the action, as the statute plainly states that 'an insurance company . . . that brings an action in bad faith shall be liable . . . .'" *Steadfast Ins. Co. v. Auto Mktg. Network Inc.*,

No. 97 C 5696, 2001 WL 881324, at *8 n. 19 (N.D. Ill. Aug. 2, 2001). Moreover, the court noted that the original complaint "contained no substantive allegations against Imperial." *Id.* at *8. Accordingly, the court is satisfied that the objectively baseless element has been met, and the jury shall decide Steadfast's subjective motivation to determine whether its original complaint was in fact brought in bad faith.

3.  *Damages under § 5/46-5(b).*

Under § 5/46-5(b), "an insurance company . . . that brings an action against a person under subsection (a) of this Section in bad faith shall be liable to that person for twice the value of the property claimed, plus reasonable attorney's fees." In determining damages in this case, the parties dispute the phrase "value of the property claimed." According to Steadfast, the term "value of the property claimed" refers to the insurance benefits claimed by AMN in an allegedly false claim. Thus, if AMN submitted a claim for $4 million, and Steadfast maintained in bad faith that this claim was a knowing attempt to assert control over its property, AMN would be awarded $8 million or "twice the value of the property claimed."

Imperial views the statute differently. Imperial believes the phrase "value of the property claimed" refers to the damages that Steadfast sought in its statutory fraud claim under § 5/46-5(a). Thus, if Steadfast brought an action for $12 million under part (a) of the statute (which amount would either be two or three times the value of the property obtained or attempted to be obtained through fraud), then Imperial could seek double that amount, or $24 million. Imperial's view could result in an insured bringing an action under § 5/46-5(b) being awarded six times the value of the property allegedly fraudulently obtained or attempted to be obtained.

7

Steadfast's construction of the statute, and its calculation of damages, is more persuasive. This conclusion stems in large part from a plain reading of part (a) of the statute in relation to part (b). Part (a) makes numerous references to a "claim," and states that when a "false claim" is made, the insurance company can recover either twice the value of the property wrongfully obtained or attempted to be obtained. Part (b), in apportioning the liability of an insurance company that brings an insurance fraud action in bad faith, seeks to hold that insurance company liable for twice the value of the property claimed. Imperial believes that because part (b) refers to the value of the property *claimed*, and not the language of the property attempted to be *obtained* used in part (a), the legislature made a conscious decision to define damages in part (b) differently from part (a). But both parts (a) and (b) consistently speak of the "value of the property" whether it be *obtained, attempted to be obtained* or *claimed*.

There is no dispute that in part (a) the "value of the property" refers to the underlying benefits claimed by the insured, and the courts finds unpersuasive Imperial's view that the "value of the property" is defined differently simply because the term "claimed" is used. The term "claim" is used in numerous portions of part (a) and in each instance refers to an insured asserting its rights under an insurance policy. Reading the use of the term "claimed" in part (b) to also refer to the amount an insured seeks under its insurance policy is consistent with part (a), even if the statute in part (a) also refers to the amount "wrongfully obtained" or "attempted to be wrongfully obtained."

Moreover, notwithstanding the use of "obtained" or "attempted to be obtained" in part (a) and "claimed" in part (b), there is little to support Imperial's theory that the damages amount the legislature intended in part (b) was actually double the treble damages applied in part (a).

8

Indeed, as Steadfast points out, if the legislature intended Imperial's view, it could have spelled it out quite easily by remarking that the damages recoverable in part (b) would be twice the damages sought in the action brought under part (a). Instead, part (b) continues to refer to the "value of the property" as that term is used throughout part (a). Accordingly, the court believes it clear that the term "value of the property claimed" refers to the alleged false insurance benefits claimed by an insured, and that part (b) allows for double that amount to be obtained by an insured who is subject to a bad faith insurance fraud action.[5]

Steadfast also attempts to raise the issue of what in fact was the value of the property claimed by AMN. According to Steadfast, this issue should be submitted to the jury. The court has previously stated that determining what the proper measure of damages is under § 5/46-5(b) is a question of law (see Transcript of April 15, 2003), but that does not preclude a jury from resolving the factual issue in this case as to the "value of the property claimed" under that measure. Imperial states that Steadfast stands to be benefitted by this result insofar as the damages would now be related to Steadfast's ability to provide competent evidence to support its claim under part (a) of the statute. For example, prior to the first trial the court ruled that the "amount claimed" was $4,679,438 because Steadfast had failed to produce competent evidence to supports its claim for $12.5 million. Imperial asserts that Steadfast's failure to bring forth competent proof actually serves to its benefit because its "bad faith" has served to lessen the amount of damages the insured may recover in part (b). However, any finding previously made

---

[5] Both of the parties quarrel over whose interpretation would most comport with the legislative intent of the statute. Insofar as the legislative purposes of the statute are not entirely clear other than to provide an action for insurance fraud and some sort of remedy for insureds subject to bad faith insurance fraud cases, the court notes that neither of these interpretations persuaded its decision.

9

concerning the amount AMN claimed which was as a result of Steadfast's inability to prove its claim is not binding on Imperial's action under part (b) of the statute. It is within Imperial's power to submit proof establishing the amounts AMN claimed and which were rejected by Steadfast. This fact issue will be submitted to the jury.

**B.     Motion in Limine No. 2 to bar certain expert testimony**

In its second motion Steadfast seeks an order barring certain testimony by Imperial's expert witnesses Steven Lubet ("Lubet") and Stephen Diamond ("Diamond"). Steadfast requests an order that takes four parts, including (1) barring any expert testimony on the statutory construction or interpretation of 720 ILCS 5/46-5(a) and/or (b); (2) barring any expert testimony on the ultimate jury issue of whether Steadfast filed its claim against Imperial in "bad faith," that is, with "improper motive" or "ill will;" (3) barring any expert testimony on whether Steadfast or its counsel violated Federal Rule of Civil Procedure 11; and (4) barring any cumulative expert testimony by Imperial's two legal experts.

Starting with (1) above, Imperial states that this concern is mooted insofar as its experts will not proffer any evidence on the construction or interpretation of the statute, which this court specifically defined in its August 2, 2001 opinion. *See Steadfast Ins. Co. v. Auto Marketing Network, Inc.*, No. 97 C 5696, 2001 WL 881324, at *1 (N.D. Ill. Aug. 2, 2001). The same would apply to the rulings in Part A above. As for (4) above, the court would be inclined to grant the motion, as the testimony of both Lubet and Diamond would certainly appear to be cumulative. Imperial, however, asserts that any ruling on whether Lubet and Diamond may both testify is premature given Steadfast's motion for reconsideration of this court's December 8, 2003 opinion rejecting Steadfast's motion to augment the expert witness list. Imperial argues that if that

10

motion for reconsideration were granted, both experts would likely need to supplement their expert reports in response to the opinions offered by Steadfast's experts. The court will defer ruling on this issue, but assuming the motion to reconsider is denied, an order barring any cumulative expert testimony is appropriate.

Moving on to concern (2), the court previously left this issue open in its opinion granting Steadfast's motion for a new trial. There is no doubt that allowing Imperial's experts to testify as to whether Steadfast filed its complaint in "bad faith" or with an "improper motive" would be allowing expert testimony on the ultimate issue at trial. This, as Steadfast concedes, is allowed under the Federal Rules of Evidence. *See* Fed. R. Evid. 704(a) ("[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). Nonetheless, Steadfast argues that opinion testimony on the ultimate issue in this case should not be allowed because it will not assist the trier of fact and will usurp the jury's function. As Steadfast points out, this court has ruled that Imperial's counterclaim under 720 ILCS 5/46-5(b) is assessed by reference to a subjective bad faith standard requiring proof of "improper motive" or "ill will." Steadfast maintains that Imperial's experts will have no knowledge, information or expertise on Steadfast's subjective intent and, in any event, the experts' opinions would not serve to assist the jury. *See, e.g., Dahlin v. Evangelical Child and Family Agency*, No. 01 C 1182, 2002 WL 31834881, at *3 (N.D. Ill. Dec. 18, 2002) (rejecting testimony by expert that actions constituted fraud because it "is a quintessential jury determination on which the Court will instruct a jury concerning the factors it is to consider."); *Olech v. Village of Willowbrook*, No. 97 C 4935, 2002 U.S. Dist. Lexis 19578,

11

at *3 (N.D. Ill. Oct. 10, 2002) (noting that to allow expert "to opine on the intent of the defendants would invade–and perhaps usurp–the fundamental fact-finding role of the jury.").

In response, Imperial argues that, in contrast to the cases cited by Steadfast, its experts possess a high level of education and training and can opine on the ultimate issue of bad faith by making inferences regarding the evidence that the ordinary juror would not be able to do. Imperial asserts that its experts can assess the failure of Steadfast to comply with the federal rules, the sophistication and resources of Steadfast and its lawyers as well as the significance of Steadfast's instruction to its lawyers to withhold service of the complaint.

Imperial's arguments notwithstanding, the court is not persuaded that Imperial's experts should be able to opine concerning the ultimate issue of bad faith. While no doubt true that Imperial's experts have a wealth of knowledge pertaining to certain issues, for example, application of the federal rules and how Steadfast's conduct measured up against those rules and the requirements of a prefiling investigation prior to filing a complaint, its experts are in no better position than the jury to assess Steadfast's subjective intent. The testimony of Imperial's experts concerning how Steadfast's conduct measured up against the obligations imposed on attorneys may well help the jury determine whether Steadfast's actions constituted bad faith. However, allowing Imperial's experts to testify about Steadfast's intent would be little more than "tell[ing] the jury what result to reach . . . ." *Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th Cir. 1997); *see also*, C. Mueller & L, Kirkpatrick, Federal Evidence § 361 at 708 (1994 & Supp. 2001) (noting that expert testimony on the ultimate issue "remains excludable, not because it directly touches ultimate issues, but because it is not helpful. And FRE 704 is not an open sesame to all opinion.").

Nor is this a case where an objective standard of liability is imposed such as, for example, a legal malpractice case where the conduct of an attorney is measured up against an objective "standard of care." *See, e.g., Peaceful Family Ltd. P'Ship v. Van Hedge Fund Advisors, Inc.*, No. 98 C 1539, 2000 WL 1644315, at *2 (N.D. Ill. Oct. 26, 2000) ("The general rule under Illinois law is that expert testimony is required in legal malpractice cases to establish the standard of care and defendant's breach of that standard."). Instead, the relevant inquiry here is what was Steadfast's subjective intent in bringing its Complaint. The jurors will be able to draw any necessary inferences from the testimony presented to determine the issue of whether Steadfast filed its Complaint with an improper motive or ill will.

Finally, in part (3) Steadfast seeks an order barring any expert testimony on whether Steadfast or its counsel violated Federal Rule of Civil Procedure 11. However, as the court noted in its October 27, 2003 opinion, it is relevant how Steadfast's conduct measured up against the obligations imposed under the Federal Rules of Civil Procedure, because a jury may infer that such conduct was brought with an improper motive or ill will if such procedures were not followed. Accordingly, Steadfast's request in this regard is denied.

C.  **Motion in Limine No. 3 to bar Allen Rugg from conducting the examination of Steven Bauer at trial**

For its last motion in limine, Steadfast seeks an order barring Allen Rugg, Imperial's lead attorney, from conducting the examination of Steadfast witness Steven Bauer at trial. Steadfast argues that Rugg will, in essence, be acting as both an advocate and a witness if he is allowed to cross-examine Bauer. At least part (if not most) of Rugg's examination of Bauer is expected to center on issues as to which Rugg has personal knowledge, particularly a meeting that took place

13

in Tulsa, Oklahoma where both Rugg and Bauer were present (also present at the meeting was, among others, Steadfast's former lead counsel Howard Epstein).[6]

The Local Rules for the Northern District of Illinois provide that "a lawyer shall not act as an advocate at trial . . . if the lawyer knows or reasonably should know that the lawyer may be called as a witness therein . . . ." N.D. Ill. L.R. 83.53.7(a). This is not exactly the situation here, as Imperial did not call Rugg as a witness at the first trial and will not do so in the second trial, and Steadfast has never listed Rugg as a witness to be called at trial. Therefore, Steadfast's argument instead centers on its belief that Rugg will be introducing his own testimony concerning the meeting at issue through his cross-examination of Bauer. As one court has described this problem,

> [T]he "attorney as witness" problem arises not only when an attorney testifies, but also when an attorney puts his own credibility at issue by questioning the witness about alleged conversations between that witness and himself. Such questioning, without the attorney's formal testimony, may create an improper inference in the minds of the jury. This situation is known as the "unsworn witness" problem, and it is by itself an adequate grounds for disqualification.

*Thomas Steel Corp.* v. *Ameri-Forge Corp.*, No. 91 C 2356, 1991 WL 280086, at *2 (N.D. Ill. Dec. 27, 1991).

---

[6]Imperial's first argument is that Steadfast waived any right to attempt disqualification of Rugg. *See Kafka* v. *Truck Ins. Exch.*, 19 F.3d 383, 386 (7th Cir. 1994) ("A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion.") (citation omitted). However, in this case Steadfast seeks only limited disqualification of Rugg for purposes of the cross-examination of Bauer. The cases Imperial cites to are scenarios where the attorney had represented the client for some time before the opposing party moved for disqualification; thus, the attorney had already taken part in the activities sought to be disqualified. *See, e.g., Weeks* v. *Samsung Heavy Indus. Co., Ltd.*, 909 F. Supp. 582, 584-85 (N.D. Ill. 1996); *Alexander* v. *Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1108 (D. N.J. 1993). On the other hand, in this case Steadfast objected prior to Rugg's cross-examination of Bauer, and thus prior to Rugg taking part in the activity Steadfast sought to disqualify. While Imperial claims that this issue should have been raised at an early time, Steadfast claimed that it was not raised earlier because it had assumed that Rugg would not be cross-examining Bauer. While such a theory may be questioned, particularly when Epstein (who was also at the meeting) conducted the direct of Bauer, the court accepts Steadfast's representation as true at this time. Thus, the court does not believe that Steadfast has waived its objection.

14

Applying the unsworn witness rule to the facts in this case, the court does not believe that the specific scenario present here warrants Rugg's disqualification from cross-examining Bauer. The problem posed by an unsworn witness acting as an attorney would come to the forefront when the attorney and witness have differing views or recollections of certain events, thereby causing it to become necessary for the attorney to be called as a witness to clarify which version of the facts are true or for the attorney to inject his own credibility into the case to persuade the jury. *See, e.g., United States* v. *Kwang Fu Peng*, 766 F.2d 82, 86 (2d Cir. 1985) (concluding that attorney disqualification was necessary because dispute between attorney and witness brought out on cross-examination "suggests that the two had very different recollections of the meeting, or at least might have led the jury to think such to be the case" and that if attorney continued as counsel without taking the stand "the jury might well have interpreted his questions or summation as testimony conveying his own version of the July meeting."). Here most of the events of the Tulsa meeting are uncontradicted, and to the extent Imperial wishes to bring forth testimony concerning the meeting, it represents that it will call other witnesses to do so. Accordingly, Rugg will not be injecting his own credibility into his examination of Bauer. Thus, given that motions for disqualification are generally disfavored, and given that Rugg will not testify, not inject credibility determinations into his examination, and the circumstances of the meeting at question are largely uncontradicted, Steadfast's motion in limine is denied.

## CONCLUSION

Wherefore, Steadfast's motions in limine [#'s 331, 332, and 333] are granted in part and denied in part as stated above.

Enter: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: January 26, 2004